IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

--------------------------------------------------------

| | |
|---|---|
| LYNDA SIRLOUIS, | : CASE NO. 1:10 CV 00469 |
| | : |
| Plaintiff, | : MEMORANDUM OF OPINION |
| | : AND ORDER |
| vs. | : |
| | : |
| FOUR WINDS INTERNATIONAL CORP., et | : |
| al, | : |
| | : |
| Defendants. | : |

--------------------------------------------------------


UNITED STATES DISTRICT JUDGE LESLEY WELLS

        The present dispute revolves around a 2008 Four Winds Hurricane

recreational vehicle ("the vehicle" or "the RV") purchased by the plaintiff Lynda

Sirlouis, an Ohio resident. Defendant Four Winds International Corporation ("Four

Winds"), a Delaware corporation, whose principal place of business is in Indiana,

manufactured the RV's camper shell. Defendant Ford Motor Company, whose

principal place of business is in Michigan, manufactured the chassis. In her five count

amended complaint, Ms. Sirlouis alleges that the RV is a "lemon" under the Ohio

Consumer Sales Practices Act (OCSPA); that the defendants breached express and

implied warranties under the Ohio Uniform Commercial Code; that she is entitled to a

remedy under Magnuson-Moss Warranty Act; that the defendants engaged in unfair,

deceptive, and/or unconscionable acts in violation of the OCSPA; and that the

defendants are liable for breaches of warranty sounding in tort.  (Doc. 10, amended

complaint).

The parties have completed discovery. The Court is now presented with cross motions for summary judgment. In its motion, defendant Four Winds argues that Michigan law – not Ohio law – should apply in this instance, and it addresses the plaintiff's claims as such. (Doc. 26). Ms. Sirlouis filed an opposition, in which she responds to Four Winds' choice of law arguments, but does not address Four Winds' substantive arguments under Michigan law. (Doc. 39). Four Winds filed a reply. (Doc. 40). Ford also filed a motion for summary judgment, though it presents its arguments under Ohio law. (Doc. 28). Ms. Sirlouis did not respond. Four Winds, however, filed a statement of position on Ford's motion. (Doc. 38). Finally, Ms. Sirlouis filed a motion for partial summary judgment on the Lemon law claim only. (Doc. 31). Both Four Winds and Ford oppose her motion. (Doc. 36; Doc. 37).

For the reasons that follow, Four Winds' motion will be granted in part and denied in part; Ms. Sirlouis's motion will be denied; and Ford's motion will be granted.

## I. Background

Ms. Sirlouis and her husband[1] are residents of Ohio. In July 2008, the Sirlouises were in the market for an RV. During their hunt, they were referred by Four Winds' sales department to General RV, a dealership located in Brownstone, Michigan. (Doc. 32-1 at 7). The Sirlouises visited General RV's website and found the RV among the listings. (Id.).

They traveled to Michigan to see the RV first hand. After looking the unit over, they decided to buy it, and Ms. Sirlouis entered into a purchase agreement with General RV, which is not a party to this suit. Ms. Sirlouis agreed to a purchase price

---

[1] While initially a party to this suit, Mr. Sirlouis was voluntarily dismissed on 16 March 2011. (Doc. 23).

of $62,078.90, around what was listed on the internet. (Doc. 27-1, p. 11; Doc. 32-1, p. 8). It was agreed that a number of repairs and certain "fit and finish" issues would receive attention in Michigan, before Ms. Sirlouis took delivery of the RV.  (Doc. 38-1, ¶4; Doc. 33-1, pp. 13-15; Doc. 32-1, pp. 9-11). These repairs took place between 15 July 2008 and 26 July 2008. (Doc. 38-1, ¶4(a)). The dealer instructed Ms. Sirlouis and her husband to take the RV to General RV's Canton, Ohio store, if they encountered any further problems that required repair. (Doc. 32-1, p. 12). Several days later, General RV's porter delivered the vehicle to the Sirlouises' home in Ohio. (Doc. 27-2 at 6).

Ford manufactured the chassis of the vehicle, upon which Four Winds, the final stage manufacturer, mounted the RV shell. (Doc. 28-2, p. 2; Doc. 27-4, ¶4). Ford furnished Ms. Sirlouis with limited warranty which required it "without charge, [to] repair, replace, or adjust all parts on [the] vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory supplied materials or factory workmanship." (Doc. 28-5, p. 11; Doc. 28-3, ¶4). Four Winds also provided a limited warranty which provided that "in the event that a substantial defect in material or workmanship, attributable to Four Winds, is found to exist during the warranty period, Four Winds will repair and replace the defective material or workmanship, at its option, at no charge to the RV owner, in accordance with the terms, conditions and limitations of this Limited Warranty." (Doc. 27-1, p. 29).

Soon after delivery, Ms. Sirlouis had numerous complaints about the RV. Most notably, she reported that the vehicle vibrated severely when driven at highway speeds. (Doc. 33-1, p.19; Doc. 29-9, pp. 26-27). In the months that followed the

defendants addressed the vibration and a number of other issues, which are described as follows, according to a repair timeline provided by Four Winds. From 23 August 2008 to 29 August 2008, the RV was in the shop for repairs to the microwave, dining room, hallway window frame, and the rear vision camera. (Doc. 38-1, ¶4b).

Ford and a third party contractor called Mor-Ryde then addressed Ms. Sirlouis's vibration related complaints.  (Doc. 38-1, ¶3). On 18 September 2008, Mor-Ryde came to Ohio and worked on the drive train. From 22 September 2008 to 25 September  2008, an Ohio Ford dealership addressed the vibration by running out and road indexing the tires. (Doc. 38-1, ¶3). On 2 October 2008, Four Winds joined in the effort to solve the vibration problem, and it received the vehicle in Indiana. After determining the problem related to the vehicle chassis, Four Winds sent the RV to an Indiana Ford dealership, which subbed the job, again, to Mor-Ryde. Repairs were completed on 8 October 2008. (Doc. 38-1, ¶3).

Then, from 9 October 2008 to 10 October 2008, the backup monitor, the radio, and the cigarette outlet were repaired. (Doc. 38-1, ¶4c). Finally, from 29 November 2008 to 10 December 2008 the RV received repairs on the side window latches, the molding, the furnace, and paint. (Doc 38-1, ¶4d).

Ms. Sirlouis alleges a different timeline. In her brief supporting her motion for summary judgment, she states that she brought the vehicle to the Ford dealership in Ohio on 19 August 2008. (Doc. 31-1, p. 2). She states that after four days the dealership told her they could not repair the vehicle. (Id.). On Ford's instruction, she then drove the vehicle back to General RV on 23 August 2008. (Id.). She says the vehicle was not returned to her until 11 October 2008. (Id.). Ms. Sirlouis states that

4

the vehicle was returned for repair on 19 November 2008, and she retook possession six days later. (Id.). Notably, none of these factual assertions are supported by affidavit or by any other documentary evidence. The affidavit supporting her motion states that "during the first year and 18,000 after I purchased it, the motor home was out of service because of repairs and repair attempts under the Four Winds International and Ford Motor Company warranties for more than 30 days." (Doc. 31-1, p. 13).

In one of her depositions, Ms. Sirlouis stated that most of the repairs noted above had been accomplished to her satisfaction and on the first try. (Doc. 33-1, p. 23). She continues to maintain, however, that the vibration persists despite numerous attempts at repair. (Doc. 33-1, p. 19; Doc. 29-9, pp. 26-27). After initiating this suit, Ms. Sirlouis retained Mark Sargent, a forensic mechanic, to provide his expert opinion as to whether the RV was defective. Mr. Sargent drove and examined the vehicle, and he subsequently issued a report on 25 February 2011. (Doc. 25-1, p. 35). He concluded that "the driveline vibration will eventually result in multiple failures in the vehicle, including but not limited to failure of the transmission, differential and/or engine." (Doc. 25-1, p. 41).He further opined that "[the] vehicle is not fit for its intended purpose." (Id.).

Ford retained its own expert, John Herdzik. As explained in his report, Mr. Herdzik conducted a series of tests using a MTS 4100 vibration analyzer, a device that measures the degree of vibration present in the vehicle. (Doc. 28-7, p. 1). Mr. Herdzik noted a "slight vibration" at speeds between 50 and 75 miles per hour. (Id.). He stated that "the MTS 4100 vibration analyzer readings indicate the motor home is

within commercially acceptable range." (<u>Id.</u>). He attributed the vibration to "the custom driveshaft being out of balance" and further noted that "frame modifications can change the harmonic of the factory vehicle." (<u>Id.</u>).

## II. Summary Judgment Standard

Summary judgment is proper if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "[S]ummary judgment will not lie if the ... evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. <u>See Anderson</u>, 477 U.S. at 248. Therefore, the movant has the burden of establishing that there is no genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Barnhart v. Pickrel, Schaeffer & Ebeling Co.</u>, 12 F.3d 1382, 1388-89 (6th Cir.1993). But the non-moving party "may not rest upon its mere allegations." Fed.R.Civ.P.56(c)(1); <u>see Celotex</u>, 477 U.S. at 324; <u>Searcy v. City of Dayton</u>, 38 F.3d 282, 286 (6th Cir.1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." <u>Moore v. Philip Morris Cos.</u>, 8 F.3d 335, 339-40 (6th Cir.1993).

The standard of review for cross-motions of summary judgment is the same. <u>Taft Broad. Co. v. U.S.</u>, 929 F.2d 240, 248 (6th Cir.1991). The fact that "both parties have moved for summary judgment does not mean that the court must grant

6

judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." Id. Rather, the court must evaluate each party's motion on its own merits. Id. In the case of cross-motions, the Court must "tak[e] care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Id.

### III. Law and Argument

#### A. Four Wind's Choice of Law Arguments

Ms. Sirlouis pleaded her claims under Ohio law, but Four Winds maintains that the Court should apply Michigan law instead. A federal court exercising diversity jurisdiction must apply the law of the forum state, including that state's choice of law principles. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Miller v. State Farm Mut. Automobile Ins. Co., 87 F.3d 822, 824 (6th Cir.1996). In the present case, Ohio's choice of law principles will determine the applicable state law. The Supreme Court of Ohio has adopted the choice of law rules contained in the Restatement (Second) of Conflict of Laws (1971). See Morgan v. Biro Manufacturing Co., 15 Ohio St. 3d 339 (1984).

The discussion must begin with the observation that Four Winds does not acknowledge two threshold questions that must be answered before embarking on a choice of law analysis in Ohio. First, Four Winds fails to argue that an actual conflict exists between Ohio and Michigan law with respect to Ms. Sirlouis's various warranty claims. Under Ohio law, the party seeking application of the law of another state must show, at the outset, the existence of a genuine conflict between Ohio law and the law of the foreign jurisdiction. See Glidden Co. v. Lumbermens Mut. Cas. Co., 112 Ohio

St.3d 470, 474 (Ohio 2006); <u>Cross v. Carnes</u>, 132 Ohio App.3d 157, 168 (Ohio App.1998).

The burden is on Four Winds to show that an actual conflict exists. It has not attempted to meet this burden, and the Court rejects outright the contention that Michigan law should apply to the plaintiff's warranty claims. As to the Lemon Law claim, however, Four Winds notes the existence of a genuine conflict. Under the Michigan Lemon Law, recreational vehicles, such as the one at issue here, are statutorily exempt from coverage. <u>See</u> Mich. Comp. Laws Ann. § 257.1401(F). This is not the case in Ohio. <u>See</u> Ohio Rev. Code Ann. § 1345.71(D). Therefore, the analysis that follows applies only to the Lemon Law claim.[2]

Four Winds also does not answer the second threshold question, which is how the Lemon Law claim should be classified. Under Ohio law, a given cause of action must be classified as sounding in contract or tort, because different considerations apply, depending upon the classification. <u>See Ohayon v. Safeco Ins. Co. of Illinois</u> 91 Ohio St.3d 474, 476 (Ohio 2001) (citing Restatement (Second) of Conflict of Law § 7 cmt. b). Four Winds assumes, without discussion, that conflict of law principles relating to torts apply. Ms. Sirlouis, for her part, only half-heartedly suggests that her

---

[2] Four Winds treats the plaintiff's multiple claims as an undifferentiated mass. However, Ohio law recognizes the doctrine of "dépeçage" which provides for the application of different states' laws to different claims. <u>Byers v. Lincoln Elec. Co</u>., 607 F.Supp.2d 840, 846 n.16 (N.D.Ohio 2009). "The choice of law is not made once for all issues; the trend is to decide the applicable law for each issue separately. <u>International Adm'rs, Inc. v. Life Ins. Co. of No. Am.</u>, 753 F.2d 1373, 1376 (7th Cir.1985). "Each issue is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states." <u>See</u> Restatement (Second) of Conflict of Law § 145 cmt. d. Thus, the Court limits its analysis to the only claim of which Four Winds has established a conflict.

claim might better be considered a contract claim. It is not immediately apparent what the right classification is, as the Court's research revealed no case law answering this specific question. In the analysis that follows, the Court will assume, for the sake of argument, that the Lemon Law claim is properly classified as a tort, but it notes that however the claim is classified, Four Winds does not made a persuasive case that Michigan law should apply.

Four Winds' choice of law argument is as follows. It contends that under Ohio law, "the general rule is that the law of the place where the sale occurred controls a plaintiff's claims that they [sic] were economically injured by the sale of a defective product." (Doc. 26-1 at 5). Four Winds says that "this rule is departed from only where 'another jurisdiction has a more significant relationship to the lawsuit.'" (Id. (citing Clintonville Service Center v. Monaco Coach Corp., 2007 WL 1024809 (S.D. Ohio 2007)). To determine whether another state has a more significant relationship to the lawsuit, Four Winds says that the Court must consider the following contacts contained in Section 145 of the Restatement, which include:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Law § 145.

Four Winds evaluates these contacts and states that the first two weigh in favor of Michigan law, because the plaintiff's injury and the conduct giving rise to it both occurred in Michigan. Four Winds sees the third contact as relatively insignificant because the parties' domiciles are spread out over several states. As to

9

the fourth factor, Four Winds perceives no true center to the parties' relationship, because the vehicle chassis came from Michigan and the rest of the RV came from Indiana. Further, some repairs occurred in Indiana, and some in Ohio. Four Winds concludes that because the first two contacts favor Michigan and the last two favor no state in particular, Michigan law must apply. In support of this argument, Four Winds relies heavily on two Ohio district court cases, Clintonville Service Center v. Monaco Coach Corporation, 2007 WL 1024809 (S.D. Ohio March 30, 2007), and Nationwide Mutual Fire Ins., Co. v. General Motors Corp., 415 F.Supp.2d 769 (N.D. Ohio 2006).

Before considering whether there is merit to the contention that Michigan has the most significant relationship to this suit, the Court must express its disagreement with the legal framework Four Winds employs in addressing the issue. Ohio has adopted a "flexible case by case approach" to solving a conflict of laws problem, as set forth in the Restatement (Second) of Conflict of Laws. See Morgan, 15 Ohio St. 3d 339. In a tort case, the Court begins with the presumption that "the law of the place of injury controls," not, as Four Winds would have it, "the law of the place of sale." See Morgan, 15 Ohio St.3d at 342 (citing Restatement (Second) of Conflict of Laws § 146). The presumption is rebutted when "another jurisdiction has a more significant relationship to the lawsuit." Id.

Four Winds seems to believe that the determination whether another state has a more significant relationship to the suit depends solely on consideration of the Section 145 contacts. However, the Supreme Court of Ohio has stated that the more significant relationship test depends on consideration of *both* the contacts under

10

Section 145 *and* the principles under Section 6. See Morgan, 15 Ohio St. 3d at 342.

As stated in Section 145 of the Restatement:

> [t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties *under the principles stated in § 6.*

Id. (emphasis added); See Morgan, 15 Ohio St.3d at 342. Those principles are as follows:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>
> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6.

Not only are these principles essential to the choice of law analysis, their application guides the determination as to which state has the most significant relationship to the lawsuit, with respect to the particular issue. MacDonald v. General Motors Corp., 110 F.3d 337, 342 (6th Cir.1997); See Restatement (Second) of Conflict of Laws § 6 cmt. b. The Restatement comments stress the principles' importance, noting that they "underlie *all* rules of choice of law and are used in evaluating the significance of a relationship, with respect to the particular issue, to the potentially interested states, the occurrence and the parties." Id. (emphasis added).

11

On the other hand, the Section 145 contacts, upon which Four Winds relies almost exclusively, are only to be "taken into account in applying the principles of § 6 to determine the law applicable to an issue." Restatement (Second) of Conflict of Laws § 145. In a tort case, those contacts are as follows:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

Id. The Restatement attributes no special significance to these contacts, in and of themselves. Rather, they are "evaluated according to their relative importance with respect to the particular issue." Id. That is to say, they manifest their importance when viewed in light of the principles contained in Section 6. Id. Further, depending on the issue, certain contacts may have little importance in determining the state whose law applies. Id., cmt e. "This will be so, for example, when the place of injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties with respect to the particular issue." Id.

Before applying the above described principles to this case, the Court addresses Nationwide and Clintonville. Four Winds maintains that these cases support its argument that the Michigan Lemon Law applies, because Ms. Sirlouis, an Ohio consumer, bought her RV in Michigan and, in Four Winds' view, experienced injury at the time of sale. In Nationwide, the Court noted that the location where a product was sold is important to determining a choice of law question in a products liability case. Nationwide, 415 F.Supp.2d at 775. That court stated that "'[i]n products liability claims, the primary interest of the state is to deter the sale and/or

manufacture of negligently or defectively manufactured goods to that state's citizens.'" Id. (quoting Cheatham v. Thurston Motor Lines, 654 F.Supp. 211, 214 (S.D. Ohio 1986)).  The court reasoned that "'[b]ecause the central event upon which a products liability claim is normally based is the sale of goods, injured parties would expect that the law of the place of sale should govern . . . .'" Id.

Unlike Nationwide, the particular issue under consideration in the present case is not a products liability claim. Therefore, the policy of deterrence underlying the claims in Nationwide is not present here. As discussed in more detail below, the policy underlying the plaintiff's Lemon Law claim is not one of deterrence; rather, the purpose of the Lemon Law is to protect the consumer by providing a remedy for having purchased a "lemon." See discussion infra p. 14-15. The Restatement reveals that the degree to which a state has interest in a suit should be determined in light of the particular issue involved. See Restatement (Second) of Conflict of Laws § 145. Because the issue in Nationwide is different from that in the present case, Nationwide is inapposite.

Four Winds' reliance on Clintonville is also misplaced. Like the present case, Clintonville involved an Ohio plaintiff who purchased a recreational vehicle from an out of state dealer. Clintonville, 2007 WL 1024809 at *1. That plaintiff brought an Ohio Lemon Law claim, implied warranty claims under the UCC and Magnuson-Moss, and claims under Ohio CSPA. Id. at *2. In deciding whether Ohio or Florida law should apply, on a motion to dismiss, the Clintonville court considered the contacts under Section 145 and noted that the plaintiff alleged no facts connecting the suit to Ohio. Id. at *7. The court concluded that Ohio's relationship to the suit was

13

not so significant to merit application of its law. Id. Contrary to Four Winds' assertions, however, Clintonville did not conclude that a Lemon Law plaintiff's injury necessarily occurs at the time of sale. Nor did it conclude that the Lemon Law of the place of sale should necessarily apply. Furthermore, Clintonville is otherwise unpersuasive in this instance, because that court conducted a blanket analysis of all the plaintiff's claims, without paying specific consideration to the Lemon Law claim and the Section 6 factors underlying it.

At this point, it bears repeating that the choice of law question depends on which state, Michigan or Ohio, with respect to the Lemon Law claim, has the most significant relationship to the occurrence and the parties under the principles stated in Section 6.[3]  On that score, the Court will apply the Section 6 factors relevant to this case, while considering the contacts contained in Section 145, and will conclude that Ohio has the most significant relationship.

First, the Court considers the respective policies underlying the Lemon Laws of Ohio and Michigan, along with the policy underlying the field of law generally. See Restatement (Second) of Conflict of Laws § 6 (b),(c), & (e). Although the Michigan law exempts recreational vehicles from coverage, the basic policy underlying the statute is no different from that of Ohio. Both statutes are remedial in nature and seek to protect the consumer when her vehicle does not conform to the manufacturer's

---

[3] Four Winds asks the Court to presume that Michigan law applies pursuant to Section 146, because, in its view, Ms. Sirlouis's Lemon Law injury occurred in Michigan at the time of sale. As noted above, neither Clintonville nor Nationwide support the conclusion that a Lemon Law plaintiff necessarily incurs injury at the time of sale. In any event, whether or not her injury occurred at the time of sale need not be decided, because even assuming that Michigan law presumptively applies, the Section 6 factors weigh sufficiently favor of Ohio law to rebut the presumption.

express warranty. See Mich. Comp. Laws Ann. § 257.1401, et seq.; Ohio Rev. Code Ann. § 1345.71, et seq. This shared policy is in line with lemon law legislation generally. See Patricia C. Kussmann, Annotation, *Validity, Construction and Effect of State Motor Vehicle Warranty Legislation (Lemon Laws)*, 88 A.L.R.5th 301 (2001). In light of this, the Restatement finds "good reason to apply the local law of that state which will best achieve the basic policy, or policies, underlying the particular field of law. Restatement (Second) of Conflict of Laws § 6 cmt. h. If Michigan law were employed in this instance, the statutory exemption of recreational vehicles would apply. As a result, the remedial policy underlying both statutes, and lemon law legislation, generally, would not be achieved. Therefore, because application of Ohio law accommodates the underlying policy, this factor weighs in its favor.

The Court also considers the relative interests of Ohio and Michigan in determination of the issue. Restatement (Second) of Conflict of Laws § 6(c). Ohio certainly has an interest in providing Ms. Sirlouis, a resident of Ohio, with a statutory remedy for having allegedly purchased a lemon. That interest is not diminished by the fact that she purchased the vehicle in Michigan. The Ohio Lemon Law, unlike that of some states, contains no statutory requirement that a vehicle be purchased in state to invoke the law's protection. Compare Ohio Rev. Code Ann. § 1345.71, et seq. with West's Ann.Cal.Civ.Code § 1791, et seq. and Cummins, Inc. v. Superior Court, 36 Cal.4th 478 (Cal. 2005) (California Lemon Law Act does not apply to vehicles bought outside the state).

Ohio has an additional interest because the parties' relationship was, at least in part, centered there. At the time of purchase, General RV instructed Ms. Sirlouis to

take the vehicle to its Canton, Ohio dealership, if any warranty repairs were required. (Doc. 32-1, p. 12). The record indicates that a number of warranty repairs took place in Ohio. (Doc. 38-1, ¶3; Doc. 32-1, p. 13). These allegedly failed repairs form the basis of Ms. Sirlouis's Lemon Law claim. (See Doc. 10, ¶¶6,7,17). Although Four Winds contends that the parties' relationship had no center in Ohio, since the vehicle chassis came from Michigan and the rest of the RV came from Indiana, in the Court's view, these facts say more about the composition of the RV than they do about the parties' relationship. Given the issue involved, the Court concludes Ohio has an interest in resolving the Lemon Law claim.

On the other hand, Four Winds does not explain what interest, if any, Michigan would have in providing it, a Delaware company operating principally out of Indiana, with a shield from Lemon Law liability. Assuming Michigan had an interest in protecting a foreign entity that was not a party to the sale, that interest would not outweigh Ohio's interest, since the Michigan Lemon Law was enacted for the purpose of protecting consumers and not for providing loopholes to manufacturers. And, to be clear, it is not that Four Winds seeks application of a law that works to its advantage, since, generally, this is always the case in a choice of law dispute; rather, it is that the law it invokes was not designed for this purpose. This factor weighs in favor of applying Ohio law.

Next, the Court considers the "protection of justified interests." Restatement (Second) of Conflict of Laws § 6(d). Under this factor, the comments explain that "it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another

16

state." Restatement (Second) of Conflict of Laws § 6 cmt. g. In the present case,

Four Winds presents no evidence that it justifiably expected to be free from Lemon

Law liability under Michigan law. To the contrary, not only did the warranty issued to

Ms. Sirlouis contain no choice of law provision, it states that "[t]his warranty gives you

specific legal rights. You may have other rights that vary from state to state," which

further belies any justifiable expectation that Michigan law, in particular, would apply.

(Doc. 27-1, p. 32). This factor also weighs in favor of applying the Ohio Lemon Law.

Another relevant factor, "the needs of the interstate and international system"

favors a choice of law rule that "further[s] harmonious relations between states and [ ]

facilitates commercial intercourse between them." Restatement (Second) of the

Conflict of Laws § 6(a) cmt. d. If it were determined that Michigan law applied in this

instance, there is a risk that commercial intercourse between Ohio and Michigan

would be impeded, based on the Court's precedent. An Ohio consumer might

hesitate to purchase an RV in Michigan, knowing that she may not have a Lemon

Law to protect her. On the other hand, there would be little risk of disrupting

commercial intercourse if Ohio law applied, since the RV consumer would have no

such disincentive in making an out of state purchase. Therefore, this factor weighs in

favor of the application of Ohio law.

Finally, the Court considers the "ease in the determination and application of

the law to be applied." Restatement (Second) of Conflict of Laws § 6(g). "Ideally,

choice-of-law rules should be simple and easy to apply. This policy should not be

overemphasized, since it is obviously of greater importance that choice-of-law rules

lead to desirable results." Id. cmt. j. Under Four Winds' rule, the Lemon Law of the

state of purchase should apply. Under this bright line rule, determination of the

applicable law is devoid of complication. Further, application of the Michigan Lemon

Law would result in a quick dismissal of the plaintiff's claim. Therefore, this factor

weighs in favor of Michigan law.

In light of the particular issue and the constellation of facts in this case, the

Court concludes that the Section 6 factors weigh in favor of applying the Ohio Lemon

Law. This conclusion would not be altered if the Court were to construe the Lemon

Law claim as a contract issue for choice of law purposes. In a contract case, the

Court considers

> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicil, residence, nationality, place of incorporation and place of
> business of the parties.
>
> These contacts are to be evaluated according to their relative importance with
> respect to the particular issue.

Restatement (Second) Conflicts § 188. Given the particular issue, none of these

contacts would tip the scales in favor of Michigan law. The fact that Ms. Sirlouis

entered a sales contract in Michigan does not diminish Ohio's interest in providing

her with a Lemon Law remedy. Conversely, Michigan would have no greater interest

in giving Four Winds the benefit of the RV exemption, especially seeing that Four

Winds was not a party to the sale. Further, the record indicates that repairs were

performed in Ohio and that the subject of the contract, the RV, was situated in Ohio.

These contacts, in light of the Section 6 principles, favor Ohio law. Therefore,

because Ohio has the most significant relationship to this lawsuit, with respect to the

18

particular issue, the Ohio Lemon Law applies. Further, Ohio law applies with respect to the plaintiff's warranty claims, because Four Winds did not demonstrate the existence of a genuine conflict thereto.

### B. Four Winds' Motion for Summary Judgment

With respect to Ms. Sirlouis's Lemon Law claim, her express and implied warranty claims, and her Magnuson-Moss claims, Four Winds bases its motion for summary judgment on Michigan law, which does not apply in this instance. On these claims, Four Winds has presented no meaningful arguments under Ohio law, and Ms. Sirlouis has not had a proper opportunity to respond under the applicable law. Summary judgment is merited "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P 56(a). Because it has not met this burden, Four Winds' motion for summary judgment will be denied as to Ms. Sirlouis's Lemon Law and warranty claims.

While Four Winds vigorously contended that Michigan law should apply to the above noted claims, it asks the Court to examine the applicability of the Ohio Consumer Sales Practices Act on its face. This statute forbids a supplier from engaging in "unfair or deceptive act[s] or practice[s] in connection with a consumer transaction." Ohio Rev. Code Ann. § 1345.01, et seq. In her complaint, Ms. Sirlouis states that Four Winds violated the statute in a number of ways, all relating to Four Winds' alleged failure to meet its warranty obligations. (Doc. 10, ¶¶40-56).

Four Winds says that summary judgment is appropriate on this count because the sale of the RV and all negotiations relating to it occurred in Michigan. It argues

19

that the statute, on its face, applies only to an alleged deceptive or unfair sales act or practice occurring in Ohio.  It further maintains that "[a]n allegedly unfair or deceptive sales practice occurs 'in this State' only if the sale occurs in Ohio," relying on Shorter v. Champion Home Builders Co., 776 F.Supp. 333, 338-39 (N.D. Ohio 1991). In the Court's view, this is an inaccurate interpretation of Shorter and the Ohio CSPA. That case does not interpret the Ohio CSPA so as to limit its applicability to circumstances where the manufacture and sale occurred in Ohio. Rather, Shorter concludes that it is the activity of the supplier that is determinative. Shorter, 776 F.Supp. at 339 (citing Brown v. Malket Developers, 41 Ohio Misc. 57, 322 N.E.2d 367 (1974)). The plaintiffs in Shorter presented no evidence of offending conduct that occurred in Ohio, and the Court accordingly granted summary judgment. Id. (the statute "clearly indicates that the statute is only applicable if the offending conduct took place within the territorial boarders of the state of Ohio"). Thus, Four Winds is not necessarily free from CSPA liability, just because the sale and negotiations relating to the RV occurred in Michigan. Four Winds' argument that the CSPA applies only to sales that occur in Ohio is accordingly rejected.

The Court will nonetheless rule in Four Winds' favor on this count, based on its alternative argument that there is no evidence that it did anything wrong, deceptive, unconscionable, or otherwise actionable under the Ohio CSPA. In order to prevail on a claim under the Ohio Consumer Sales Practices Act, a plaintiff must establish that "a material misrepresentation, deceptive act or omission" impacted her decision to purchase the item at issue. Mathias v. Am. Online, Inc., No. 79427, 2002 WL 377159, at *5 (Ohio Ct.App. Feb. 28, 2002) (citing Janos v. Murduck, 109 Ohio App.3d 583

20

(Ohio Ct.App.1996)). Ms. Sirlouis does not oppose Four Winds' contention that the record is devoid of facts showing that it acted wrongly. By failing to do so, she does not meet her burden on summary judgment.  Four Winds' motion will be granted on this count.

### C. Ms. Sirlouis's Motion for Partial Summary Judgment

Ms. Sirlouis maintains that she is entitled to summary judgment on her Lemon Law claim. Under the Ohio Lemon Law, a consumer is entitled to a remedy, provided all other requirements are met, "[i]f the manufacturer, its agent, or its authorized dealer is unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any nonconformity after a reasonable number of repair attempts." Ohio Rev. Code Ann. § 1345.72(B). It is presumed that a reasonable number of attempts have occurred if "[t]he vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days." Ohio Rev. Code Ann. § 1345.73(B).

Ms. Sirlouis states that because "the motor home was out of service because of repairs and repair attempts under the Four Winds International and Ford Motor Company warranties for more than 30 days,"[4] she is entitled to judgment as a matter of law. (Doc. 31-1, ¶5). Ms. Sirlouis's affidavit does not specify the precise nature of the repair attempts or when they took place or for how long, and she provides no other documentary evidence elaborating on the subject. According to a detailed affidavit provided by Four Winds, the RV was in the shop on 7 separate occasions for

---

[4] In her brief, she states that the vehicle was out of commission on 8 separate occasions for a total of 59 days, but she offers no proof to support this assertion.

a total of 45 days, which would appear to meet the 30 day threshold. (Doc. 38-1). However, Four Winds contends that 33 of the 45 days out of service do not count toward the presumptive number of reasonable repairs. It accordingly maintains that summary judgment in favor of Ms. Sirlouis is not proper.

First, Four Winds states that in the case of a recreational vehicle, repairs to camper shell parts of the vehicle do not count toward the total. Indeed, the Ohio Lemon law excludes from coverage those parts of the RV that are "part of the permanently installed facilities for cold storage, cooking and consuming of food, and for sleeping." Ohio Rev. Code. Ann. § 1345.71(D). Therefore, "days out of service by reason of repair of such parts do not count toward the required thirty days." Rothermel v. Safari Motor Coaches, Inc.,1994 WL 1029332, at *4 (N.D.Ohio July 29, 1994).

Four Winds also notes that under the statute, the time period to be examined is "one year following the date of original delivery." Ohio Rev. Code. Ann. § 1345.73(A). Thus, Four Winds maintains that any repairs that took place before delivery do not count toward the 30 day total.

Four Winds also states that for a defect or condition to qualify as a "non-conformity" under the Lemon Law, it must "substantially impair[ ] the use, value or safety of a motor vehicle to the consumer and [fail to] conform to the express warranty of the manufacturer or distributor." Ohio Rev. Code Ann. § 1345.71(E). The term non-conformity does not include a "intermittent groaning or grinding noise . . . without evidence of any functional impairment." Miller v. DaimlerChrysler Motors Corp., 2001 WL 587496, at *5 (Ohio Ct. App. 2001). Nor does it include a "noise

[that] was an inherent condition of the vehicle, and never caused the vehicle to fail." Stepp v. Chrysler Corp., 1996 WL 752794, at *2 (Ohio Ct. App. 1996). A non-confomity must be an objective defective and does not include a consumer's "subjective 'shaken faith' in the car." Id. at *1-*2. Further, "'fit and finish' adjustments to parts such as moldings, windows, bumpers and headlights" are not included. Gen. Motors Acceptance Corp. v. Hollanshead, 105 Ohio App.3d 17, 23 (Ohio Ct. App. 1995).

In light of these qualifications, Four Winds contends that 33 of the 45 days out of service are not covered under the statute. It states that the 12 days between 15 July 2008 and 26 July 2008 are not covered because they took place before Ms. Sirlouis took delivery of the vehicle. Four Winds further states that these repairs were either "fit and finish" issues or adjustments that did not substantially impair the use of the RV. (Doc. 38-1, ¶4(a)).

Four Winds also states that the 7 days from 23 August 2008 to 29 August 2008 are not covered by the statute because they related to the "camper shell," i.e. a defect involving "the permanently installed facilities for cold storage, cooking and consuming of food, and for sleeping." These repairs included the microwave, and the dining room and hallway window frame. (Doc. 38-1, ¶4(b)).

Four Winds states that repairs to the backup monitor, the radio, and cigarette outlet, which took place on 2 days from 9 October 2008 to 10 October 2008 are not covered, because they were minor issues that did not substantially affect the use of the RV. (Doc. 38-1, ¶4(c)).

Finally, Four Winds states that the 12 days from 29 November 2008 to 10 December 2008 do not count, because they involved repairs to camper shell parts, such as window latches, molding, the furnace, and paint. (Doc. 38-1, ¶4(d)).

Viewing the evidence in light most favorable to the non-moving party, the Court concludes that Four Winds has raised a genuine factual issue as to the number of days that the RV was out of service. The Court accordingly will deny Ms. Sirlouis's motion for partial summary judgment.

### D. Ford's Motion for Summary Judgment

#### 1. Mark Sargent's Expert Report

As an initial matter, the Court notes that Ford contests Mr. Sargent's qualifications as an expert.  As described above, Mr. Sargent examined the RV on Ms. Sirlouis's behalf and concluded that it was not fit for its intended purpose. Ford urges the Court to discount his opinion. However, whether Mr. Sargent's experience and qualifications pass muster under Rule 702 and Daubert is an issue that need not be decided, since Ms. Sirlouis never proffered Mr. Sargent as an expert. The Court is aware of Mr. Sargent's existence only because Ford and Four Winds referenced his opinion in their briefs. Ms. Sirlouis does not rely on his opinion at all. "[U]nder Daubert and its progeny, a party proffering expert testimony must show by a 'preponderance of proof' that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of issues relevant to the case." Pride v. BIC Corp.,  218 F.3d 566, 578 (6th Cir. 2000). Ms. Sirlouis has not met this burden. The Court will exclude Mr. Sargent's opinions from consideration when ruling on Ford's motion.

24

### 2. The Lemon Law Claim

Ford maintains that it cannot be held liable under the Ohio Lemon law because it is not a "manufacturer," as that word is defined under the statute. Ms. Sirlouis has not responded to this argument, but Four Winds has provided a statement of position on the question and argues that Ford is a "manufacturer" under the Lemon Law.

The Ohio Lemon Law imposes liability on the "manufacturer, its dealer, or its authorized agent" of the "motor vehicle." Ohio Rev. Code Ann. § 1345.73. Under the statute, a "manufacturer" is defined as a "person who manufactures, assembles, or imports motor vehicles, including motor homes." Ohio Rev. Code Ann. § 1345.71(B) (incorporating the definition set forth in Ohio Rev. Code Ann. § 4517.01(R)).  A number of courts have considered the breadth of this definition in relation to facts similar to those presently before the Court. There appears to be consensus that when defective component parts come from remote manufacturers, the final assembler of the vehicle may be held liable as the "manufacturer." See Temple v. Fleetwood Enterprises, Inc., 133 F. App'x 254, 264-65 (6th Cir. 2005); Rothermal v. Safari Motor Coaches, 1994 WL 1029332, at *3-4 (N.D. Ohio July 29, 1994); Dillow v. Mallard Coach Co., 83 Ohio App.3d 801 (1992). The question here, however, is whether that definition applies to a component part manufacturer like Ford, which manufactured the motor home chassis.

Ford and Four Winds reference the three above cited cases in an effort to answer the question. First, in Temple the Court of Appeals for the Sixth Circuit stated that the term "manufacturer" applied to the final manufacturer of a motor home.

25

Temple 133 F. App'x at 264-65. The court concluded that the district court correctly dismissed claims against the component engine manufacturer, noting that "the statute's remedy is designed to be used against the final manufacturer of a vehicle." Rothermal dealt with a related question, whether the final manufacturer could be liable for defective parts provided by a component manufacturer. Rothermal, 1994 WL 1029332, at *3-4. The district court held that it could and noted that the language of the statute contemplated that the Lemon Law "remedy is to be provided by a single entity." Id. at *3.

Dillow v. Mallard Coach Company involves yet another issue.  In that case, the lower court held the final manufacturer liable to the consumer under the Lemon Law, and it dismissed the final manufacturer's cross-claims for indemnity or contribution against the component chassis manufacturer. Dillow, 83 Ohio App.3d at 806-07. The court of appeals held that dismissal of the cross-claims was improper, because the Lemon Law could not be "construed to hold that a supplier of a defective chassis is not liable to the purchaser of its defective product." Id. at 806. The purchaser of the alleged defective product, in that case, was the final manufacturer.

In the present case, it is undisputed that Ford is a component manufacturer and that Four Winds is the final manufacturer of the RV. (Doc. 28-2 at 2; Doc. 27 at 5, ¶19; Doc. 27-4, ¶4). Based on the language of the statute and the above case law, the Court concludes that the Lemon Law claim cannot proceed against Ford. As the manufacturer of the chassis specifically, Ford does not fit the description of "manufacturer," since it did not manufacture, assemble, or import the RV. Further, as noted in Rothermal, the language of the statute contemplates a remedy from a single

26

entity. Four Winds, being the final manufacturer of the RV, is that entity, pursuant to the reasoning set forth in Temple. Four Winds' argument that Dillow demands a different conclusion is without merit, because Dillow addressed whether a claim for indemnity and contribution between cross-claimants could go forward. Dillow does not address the propriety of a Lemon Law claim by a consumer against a component manufacturer, as is the case here. Therefore, as to the Lemon Law claim, Ford's motion will be granted.

### 3. The Plaintiff's Warranty and Magnuson-Moss Claims

The Magnuson–Moss Act is the federal statute that sets forth guidelines, procedures and requirements for warranties, written or implied, on consumer products. See 15 U.S.C. §§ 2301–2312. The applicability of the Magnuson–Moss Act is dependant upon a state law claims for breach of warranty. Labonte v. Ford Motor Co., 1999 WL 809808, at *7 (Ohio Ct. App. Oct. 7, 1999). "[E]xcept in the specific instances in which Magnuson-Moss expressly prescribes a regulating rule, the Act calls for the application of state written and implied warranty law, not the creation of additional federal law. Walsh v. Ford Motor Co., 807 F.2d 1000, 1012 (D.C. Cir. 1986). Therefore, the Court's consideration of Ms. Sirlouis's Magnuson-Moss claims is coterminous with her breach of warranty claims under Ohio law.

*Express Warranty Claim*

Ford's limited warranty requires it, "without charge, [to] repair, replace, or adjust all parts on [the] vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory supplied materials or factory workmanship." (Doc. 28-5 at 11). Ford maintains that Ms. Sirlouis

27

provides no evidence that Ford breached its limited warranty. The Court agrees. Based on the facts as presented, Ford took steps to abide by its warranty obligations by repairing the drive train and running out and road indexing the tires. (Doc. 38-1, ¶3). Ford's expert, Mr. Herdzik, conducted an examination of the vehicle and concluded that the vibration is "within [a] commercially acceptable range."

Ms. Sirlouis insists that the vibration persists, but she provides no evidence to counter Mr. Herdzik's conclusions. Nor does she present evidence to support her claim that the vibration results from a defect that Ford is obligated to repair. As Ford points out, "[n]oise and vibration are not defects themselves . . . . [Rather], they are symptoms of a defect." Miller v. DaimlerChrysler Motors Corp., 2001 WL 587496, at *5 (Ohio App. 8 Dist. 2001). Therefore, Ms. Sirlouis does not meet her burden on summary judgment. Ford's motion will be granted on this count.

*Implied Warranties*

Ford argues that it is entitled to judgment as a matter of law on the plaintiff's implied warranty claims because she is not in privity with Ford. Under Ohio law, "purchasers of automobiles may assert a contract claim for breach of implied warranty of merchantability, only against parties with whom they are in privity of contract." Curl v. Volkswagen of Am., Inc., 114 Ohio St.3d 266 (2007); Flex Homes, Inc. v. Ritz–Craft Corp. of Michigan, Inc., 721 F.Supp.2d 663, 673 (N.D.Ohio 2010) ("under Ohio law, privity of contract is generally a prerequisite to a breach of the implied warranties of merchantability and fitness for a particular purpose"). "[V]ertical privity exists only between immediate links in the distribution chain." Id. at 273. It is undisputed that Ms. Sirlouis purchased the vehicle from a Four Winds dealer,

28

General RV, and that Ford is the manufacturer of the RV's chassis. (Doc. 28-3, ¶3).

Therefore, Ms. Sirlouis lacks privity with Ford, and her implied warranty claims fail as

a matter of law. Ford's motion will be granted on this count.

### 4. The Plaintiff's Implied Warranty in Tort Claims

Ford maintains that it is entitled to summary judgment on Ms. Sirlouis's implied

warranty in tort claim because she has alleged no injury. "Implied warranty in tort" is a

common-law cause of action that imposes liability upon a manufacturer or a seller for

breach of an implied representation that a product is "of good and merchantable

quality, fit and safe for its ordinary intended use." White v. DePuy, Inc., 129 Ohio

App.3d 472, 478 (Ohio Ct. App.1998) (citing Ohio Jurisprudence (1987) 470,

Products Liability, Section 39). A tort claim for breach of implied warranty depends on

the existence of an injury, whether it be personal injury, property damage, or

economic loss. Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co., 42 Ohio

St.3d 40, 43-44 (1989); Temple v. Wean United, Inc., 50 Ohio St.2d 317, 321 (1977).

In her complaint, Ms. Sirlouis only states that she "incurred damage" as a result of

Ford's breach, and she does not respond to Ford's contention that she sets forth no

evidence of injury. Because Ms. Sirlouis does not meet her burden on summary

judgment, Ford's motion will be granted on this count.

### 5. Plaintiff's Claim under the Ohio Consumer Sales Practices Act

Ford argues that summary judgment is proper on Ms. Sirlouis's Ohio CSPA

claim, because Ford never made a representation to her that impacted her decision

to purchase the vehicle. In order to prevail on a claim under the Ohio CSPA, a

plaintiff must establish that "a material misrepresentation, deceptive act or omission"

29

impacted her decision to purchase the item at issue. <u>Mathias v. Am. Online, Inc.</u>, 2002 WL 377159, at *5 (Ohio Ct.App. Feb. 28, 2002) (citing <u>Janos v. Murduck</u>, 109 Ohio App.3d 583 (Ohio Ct.App.1996)). Ms. Sirlouis does not oppose Ford's contention that the record is devoid of facts that would satisfy this requirement. As a consequence, she does not meet her burden. Ford's motion will be granted on this count.

**IV. Conclusion**

For the reasons stated above, the Four Winds' motion for summary judgment is granted in part and denied in part; Ms. Sirlouis's motion for summary judgment is denied; Ford's motion for summary judgment is granted. Four Winds, at its option, may submit a renewed, properly supported motion for summary judgment based on Ohio law. The Court extends the same invitation to Ms. Sirlouis.  The parties are ordered to submit their motions within 30 days of the issuance of this order. Responses are due 15 days later.


IT IS SO ORDERED.

/s/Lesley Wells_____
UNITED STATES DISTRICT JUDGE

Date: <u>29 March 2012</u>

30