IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------ :
LYNDA SIRLOUIS,                                        : CASE NO. 1:10-cv-00469
                                                       :
                                    Plaintiff,         : <u>MEMORANDUM OF OPINION AND</u>
                                                       : <u>ORDER</u>
            -vs-                                       :
                                                       :
                                                       :
FOUR WINDS INTERNATIONAL                               :
CORPORATION, et al.,                                   :
                                                       :
                                    Defendants.
------------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

Before the Court are motions for summary judgment filed by the plaintiff Lynda Sirlouis and defendant Four Winds International Corporation ("Four Winds"), respectively. For the reasons that follow, the Court will grant the defendant's motion and enter judgment in its favor.

**I. Overview**

On 12 July 2008, the plaintiff Lynda Sirlouis bought a motorhome, without test driving it, from non-party General RV Center ("General RV"), located in Brownstone, Michigan. General RV is an authorized dealer of defendant Four Winds, the manufacturer of the vehicle. Soon after taking delivery of the motorhome, the plaintiff observed that the motorhome suffered from a "terrible vibration" when driven at speeds

above 50 mph, and she complained to General RV. Over the months that followed, the motorhome spent at least 35 days out of service and under repair, by her count, in relation to the vibration complaint. (Doc. 45, p. 5). Specifically, the vehicle was admitted to the repair facilities of Ganley Ford for 20 days; General RV for 7 Days; Mor-Ryde for 1 day; and defendant Four Winds for 7 days. Ms. Sirlouis says that despite these efforts, the vibration persists.

The plaintiff also states that the vehicle was serviced for an additional 20 days during the first few months of ownership for non-vibration related defects, such as a faulty microwave, improperly installed sink drains, and a broken toilet seat, among numerous others. It is undisputed that these non-vibration related defects were repaired to Ms. Sirlouis's satisfaction on the first try--many of them before she even took delivery of the vehicle.

On 4 March 2010, the plaintiff brought the instant suit against Four Winds, the motorhome's final manufacturer, and the Ford Motor Company, the manufacturer of the motorhome chassis, alleging that her motorhome is a "lemon" under Ohio law. She also alleged breach of express and implied warranties and violations of the Ohio Consumer Sales Practices Act.

Following discovery, all parties filed for summary judgment. Ms. Sirlouis's motion was denied. Ford's motion was granted, and all claims againts it were dismissed. The Court granted in part and denied in part Four Winds' motion. Specifically, Four Winds' motion was granted as to the plaintiff's claim that Four Winds engaged in unfair, deceptive, or unconscionable acts in violation of the OSCPA, but the motion was otherwise denied, as Four Winds improperly argued the remaining claims under

2

Michigan law. The Court invited Four Winds to refile its motion and present arguments under Ohio law. Ms. Sirlouis was also offered a second chance at summary judgment. The parties' refiled motions and responses are presently before the Court.

As explained more fully in the sections that follow, Ms. Sirlouis fails to direct the Court's attention to evidence that requires submission to the finder of fact, and Four Winds is entitled to judgment as a matter of law. The discussion will, accordingly, begin and end with the defendant's motion.

To succeed under the Ohio Lemon Law, a plaintiff must demonstrate the existence of a cognizable "nonconformity," that is, a "defect or condition that substantially impairs the use, value, or safety of a motor vehicle to the consumer." Ohio Rev. Code 1345.71(E). In this instance, while it is undisputed that the motorhome produced a vibration when driven at certain speeds, the plaintiff fails to identify any objective evidence that the vibration was so abnormal that the vehicle's use, value, or safety were substantially impaired. See LaBonte v. Ford Motor Co., No. 74855, 1999 WL 809808, at *5 (Ohio Ct. App. Oct. 7, 1999) (a defect that "pose[s] no threat to ... the driveability" or "safety" of the vehicle [is] not a substantial impairment). Ms. Sirlouis's subjective assertion that the vehicle was so affected does not meet the standard. See Iams v. DaimlerChrysler Corp., 2007-Ohio-6709, 174 Ohio App. 3d 537, 551, 883 N.E.2d 466, 477 (applying an objective standard). Further, the objective evidence that the plaintiff does provide falls short of the standard.

In addition, a plaintiff must demonstrate that the manufacturer, its agent, or its authorized dealer was unable cure the nonconformity after a "reasonable number of repair attempts." Ohio Rev. Code 1345.72(B). It is presumed a reasonable number of

3

attempts were undertaken, if the vehicle was under repair for at least thirty days cumulatively or if the same nonconformity was subject to repair at least three times. Ohio Rev. Code 1345.73(A)-(B). In the present case, while it is undisputed that the vehicle was subject to vibration-related repairs on numerous occasions for a cumulative total of 35 days, Ms. Sirlouis fails to present facts demonstrating that these repair attempts are attributable to Four Winds in sufficient number or duration. As explained below, it is undisputed that the manufacturer Four Winds and its authorized dealer General RV addressed the vibration problem on only two occasions for a total of 14 days, falling short of the threshold. The remainder of the repair attempts were undertaken by Ganley Ford and Mor-Ryde. The plaintiff provides no factual or legal basis for concluding that either Ganley Ford or Mor-Ryde is the agent or authorized dealer of Four Winds, as required under the statute.

As for the plaintiff's warranty claims, the defendant is also entitled to judgment as a matter of law. Ms. Sirlouis does not present a viable implied warranty claim because she and Four Winds are not in privity of contract. See Curl v. Volkswagen of Am., Inc. 871 N.E. 2d 1141, 1147 (Ohio 2007). The breach of express warranty claim also fails on its face because Four Winds did not warrant the drive train or engine, which were the undisputed source of the claimed vibration; Ford did.

As a general observation, the Court notes that while plaintiff's counsel has submitted numerous documents, including repair records, depositions, affidavits, and other evidence, with the suggestion that a jury question is hiding somewhere within, a district court "is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v.

4

Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Rather, the Court relies on the nonmoving party to identify, and, if necessary, interpret, the specific evidence that supports her position. Because Ms. Sirlouis fails to identify such evidence by which the fact finder could reasonably find in her favor, the Court is constrained to rule in favor of the defendant.

**II. Summary Judgment Standard**

Summary judgment is proper if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "[S]ummary judgment will not lie if the ... evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. See Anderson, 477 U.S. at 248. Therefore, the movant has the burden of establishing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Barnhart v. Pickrel, Schaeffer & Ebeling Co., 12 F.3d 1382, 1388-89 (6th Cir.1993). But the non-moving party "may not rest upon its mere allegations." Fed.R.Civ.P.56(c)(1); see Celotex, 477 U.S. at 324; Searcy v. City of Dayton, 38 F.3d 282, 286 (6th Cir.1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., 8 F.3d 335, 339-40 (6th Cir.1993).

**III. Law and Argument**

    **A. The Plaintiff's Lemon Law Claim**

Ohio's Lemon Law provides:

> If a new motor vehicle does not conform to any applicable express warranty and the consumer reports the nonconformity to the manufacturer, its agent, or its authorized dealer during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier, the manufacturer, its agent, or its authorized dealer shall make any repairs as are necessary to conform the vehicle to such express warranty, notwithstanding the fact that the repairs are made after the expiration of the appropriate time period.

Ohio Rev.Code Ann. § 1345.72(A).

The statute defines a "nonconformity" as "any defect or condition that substantially impairs the use, value, or safety of a motor vehicle to the consumer and does not conform to the express warranty of the manufacturer or distributor." § 1345.71(E). The Lemon Law sets forth the consequences for failing to comply with its provisions:

> If the manufacturer, its agent, or its authorized dealer is unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any nonconformity after a reasonable number of repair attempts, the manufacturer, at the consumer's option . . . either shall replace the motor vehicle with a new motor vehicle acceptable to the consumer or shall accept return of the vehicle from the consumer and refund ... [t]he full purchase price . . . [and] [a]ll incidental damages. . . .

§ 1345.72(B).

In explaining "reasonable number of repair attempts," the statute provides, in pertinent part:

> It shall be presumed that a reasonable number of attempts have been undertaken by the manufacturer, its dealer, or its authorized agent to conform a motor vehicle to any applicable express warranty if, during the period of one year

6

>following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier, any of the following apply:
>
>(A) Substantially the same nonconformity has been subject to repair three or more times and either continues to exist or recurs;
>
>(B) The vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days;
>
>* * *

Ohio Rev. Code § 1345.73.

In the present case, Four Winds maintains that Ms. Sirlouis has failed to supply facts by which a reasonable fact finder could conclude that Four Winds is liable under the Ohio Lemon Law. Four Winds attacks the plaintiff's Lemon Law claim from essentially two angles: (1) whether Ms. Sirlouis has presented sufficient evidence to demonstrate that the alleged defects meet the definition of "nonconformity" pursuant to Ohio Revised Code § 1345.71(E); and (2) whether Ms. Sirlouis has provided facts to show that Four Winds was unable to cure the "nonconformity" after a "reasonable number of repair attempts," pursuant to Ohio Revised Code § 1345.73.

*Whether the alleged defects meet the definition of "nonconformity"*

Four Winds argues that Ms. Sirlouis has failed to put on sufficient evidence that the vibration or any other alleged defect meets the definition of "nonconformity" under the statute. A "nonconformity" is "defect or condition that substantially impairs the use, value, or safety of the vehicle." Ohio Rev. Code § 1345.71(E). In Four Winds' view, Ms. Sirlouis's own subjective assertion that the use, value, or safety of the motor home was substantially impaired by the alleged defects is irrelevant to whether the standard has been met. Rather, Four Winds contends, Ms. Sirlouis must put on *objective* evidence

7

that the impairment rises above the "trivial" or "cosmetic" or "subjective dissatisfaction of the consumer." Because she has failed to cite any such evidence in the record, Four Winds concludes, her Lemon Law claim fails as a matter of law. The defendant points out that the Ohio Supreme Court has read the definition of the term "nonconformity" to mean "major defect." Royster v. Toyota Motor Sales, U.S.A., 750 N.E.2d 531, 533, 535 (Ohio 2001). The defendant argues that the plaintiff's case should not be allowed to proceed just because she has sworn that the alleged defect is, in her opinion, "major."

Ms. Sirlouis, on the other hand, suggests that a successful Lemon Law claim does not require objective evidence of a "substantial impairment." She points out that under the statute, the term "nonconformity" is, by definition, "a defect or condition that substantially impairs the use, value, or safety of a motor vehicle to the consumer." See Ohio Rev. Code § 1345.71(E). Focusing on the words "to the consumer," Ms. Sirlouis argues that the consumer's own subjective viewpoint is determinative of whether a substantial impairment exists. The plaintiff therefore contends that her sworn statement that the motorhome suffered from a substantial impairment *as to her* is precisely the sort of evidence that the statute contemplates.

The Court has reviewed the relevant case law, and it appears that Ohio courts are divided on whether the "substantial impairment" standard is objective, as argued by Four Winds, or subjective, as argued by the plaintiff. In support of Ms. Sirlouis's position, the Ohio Court of Appeals for the Sixth District held that

> the clear and unambiguous language of R.C. 1345.72(B) requires that the determination as to whether the impairment in the vehicles use, safety, or value is deemed substantial necessarily depends on an examination of the consumer's perspective

8

Brinkman v. Mazda Motor of Am., Inc., 6th Dist. No. L–93–142, 1994 WL 193762 (Ohio Ct. App. May 13, 1994). The Court of Appeals for the Ninth District similarly decided that "[a] nonconforming motor vehicle is one that, *from the consumer's perspective*, suffers from any defect or condition which substantially impairs its use, value, or safety and does not conform to the express warranty of the manufacturer or distributor." Gray v. Chrysler Corp., 2001 WL 358389, at *2 (Ohio Ct. App. Apr. 11, 2001) (emphasis added); accord Lesjak v. Forest River, 5th Dist. No. 2003AP050037, 2004-Ohio-245, 2003 WL 23192529. ("It is clear . . . whether the use, safety or value of the motor vehicle is substantially impaired is to be determined according to a subjective standard."); see also Rothermel v. Safari Motor Coaches, Inc., Case No. 93 CV 7229, 1994 WL 1029332 (N.D. Ohio July 29, 1994) ("[W]hether the use, safety or value of the motor vehicle is substantially impaired is to be determined according to a subjective standard.").

On the other hand, there is persuasive authority to support the defendant's position that the substantial impairment standard is an objective one. In Iams v. DaimlerChrysler Corp., the Ohio Court of Appeals for the Third District decided that the applicable standard was "whether *a reasonable person* would conclude that the alleged defect or condition substantially impairs the vehicle's use, value, or safety." Iams v. DaimlerChrysler Corp., 2007-Ohio-6709, 883 N.E.2d 466, 477 (emphasis added). In reaching this conclusion, the Iams court determined, contrary to the above-noted cases, that the phrase "to the consumer" is ambiguous. The court reasoned that the phrase could either signify that "the motor vehicle's diminished use, value, or safety is measured from the affected consumer's perspective," or "simply identify that the

9

consumer is the affected object of the vehicle's diminished use, safety, or value." In resolving the ambiguity, the Iams court decided that the latter interpretation was preferrable because it is more consistent with legislative intent and the Ohio Supreme Court's previous statements on the issue.

Having considered the case law on this subject, it is this Court's view that the position of the Iams court is more persuasive than that of Brinkman, Gray, Lesjak, and Rothermal. The latter four opinions are ultimately unconvincing, because they provide little reasoning to support the conclusion that the statute unambiguously calls for application of a subjective standard. The Iams court, by contrast, was careful to demonstrate the statute's language is ambiguous since it is susceptible to more than one reasonable interpretation,[1] a conclusion with which this Court agrees. Further, Iams

---

[1] To demonstrate the ambiguity inherent in the phrase "to the consumer," the Iams court reasoned as follows:

> When the word "to" precedes a personal object word, it can be translated "in the opinion of" a particular person, as Iams argues. On the other hand, used this same way, it can also mean that person is, as a matter of fact, affected by the subject matter of the sentence.
>
> For example, consider the sentence: "The lengthy drought season is especially devastating to the local farmers." Although local farmers may, in fact, hold the opinion that the increased droughts are "especially devastating" to them, the essence of this statement is that local farmers are the "especially" affected objects of the drought season, the sentence's subject matter. The statement has nothing to do with the opinion of the local farmer; rather, it is an independent evaluation of the drought-stricken farmer's plight. Furthermore, as in the phrase "to the consumer" in the Lemon Law, nothing in the example statement prevents an objective review. That is, one can review the facts of the situation and determine whether the local farmer is, as a matter of fact, "especially" devastated, or whether, perhaps, some other group or individual is even more devastated than the local farmer. In the same way, the phrase "to the consumer" could reasonably have nothing to do with the consumer's subjective opinion; but rather, simply identify that the consumer is the affected object of the vehicle's diminished use, safety, or value.

persuasively reasoned that a construction that would admit the use of an objective standard is more consistent with the Ohio Supreme Court's decision in Royster. In that case, Ohio's high court held that a valid Lemon law claim requires the existence of a "major defect" and not merely a "cosmetic or trivial" complaint. Royster, 750 N.E.2d at 535. By limiting the scope of the Lemon Law in this way, Royster counsels against an interpretation that would allow the existence of a substantial impairment to be determined from the consumer's perspective. And, as discussed in Iams, numerous other Ohio decisions have embraced this interpretation, at least implicitly. See, e.g., Miller v. DaimlerChrysler Motors Corp., Case No. 78300, 2001 WL 587496, at *4 (Ohio Ct. App. May 31, 2001) (intermittent groaning and grinding noises and steering column vibrations did not substantially impair a vehicle's use, value, or safety); LaBonte, 1999 WL 809808, at *5 (a "warning light problem" that "posed no threat to ... the driveability" or "safety" of the vehicle was not a substantial impairment); Stepp v. Chrysler, Case No. 95CA000052, 1996 WL 752794, at *1–2 (Ohio Ct. App. Nov. 7, 1996) (a consumer's shaken faith in the vehicle did not establish a substantial impairment).

Further, the Iams court stated strong practical reasons for applying an objective standard. As that court explained,

> [i]f a subjective standard were applied . . . practically every vehicle with a defect would be a "lemon," and manufacturers would, as a practical matter, never prevail once the consumer demonstrated that the vehicle was under warranty

---

> Given that at least two reasonable interpretations of the phrase "to the consumer" exist, we find that the statute's language is ambiguous.

Iams v. DaimlerChrysler Corp., 883 N.E.2d at 472 (internal quotations and citations omitted).

11

> and the defect was timely and properly reported for repairs the required number of times. To prevail on summary judgment, the consumer would simply need to show these two elements and submit an affidavit stating that the defect substantially impaired the vehicle's use, value, or safety *to them*. A subjective standard exponentially expands the Lemon Law's application beyond its intent.

Iams, 883 N.E.2d at 476 (emphasis in original).

This Court concludes, consistent with Iams, that whether the plaintiff's vehicle suffers from a substantial impairment is to be determined by an objective standard. As a consequence, the plaintiff's subjective assertion that the vibration and other defects substantially impaired the use, value, and safety of the motorhome to her are insufficient to defeat the defendant's claim to summary judgment.

*Whether the Plaintiff has provide sufficient objective evidence of a substantial impairment*

The discussion now turns to the plaintiff's objective evidence that her vehicle suffered from a substantial impairment. The plaintiff cites the following record evidence: (1) the plaintiff's averment that the vehicle was in the shop for more than 55 days between 15 July 2008 and 18 November 2009; (2) a copy of a Technical Service Bulletin published by Ford Motor Co, which allegedly addresses vibration problems in the type of chassis used on the plaintiff's vehicle; and (3) the plaintiff's expert's deposition testimony as to the existence and severity of the vibration.

In the Court's view, the objective evidence cited by the plaintiff is insufficient to demonstrate the existence of a substantial impairment. First, the claim that the motor home spent at least fifty-five days in the shop says nothing about the severity of the vibration from which the motorhome allegedly suffered. The plaintiff cites no authority for the proposition that the number of days a vehicle is out of service is commensurate

12

to the severity of impairment. To the contrary, the number of days out of service and the question of "substantial impairment" are separate considerations under the Ohio Lemon Law. On the one hand, a plaintiff establishes that a "reasonable number of repair attempts" have been undertaken by showing that the vehicle was out of service for at least thirty days, and, on the other, she must show that the time out of service was due to a defect or condition that substantially impaired the use or value of the vehicle. The plaintiff provides no reasoned basis for conflating these two considerations.

Furthermore, even if the severity of impairment could be judged by the number of days out of service, it is undisputed that twenty of the total days out of service can be attributed to defects that are, as a matter of law not substantial. These include the "fit and finish" issues such as repair of a damaged wall border, a leaky toilet, and an improperly installed bathroom fan, which were resolved before the plaintiff even took delivery of the vehicle; and other cosmetic issues that included a missing border in the bathroom, a knicked window frame, and issues with the window latches, molding, and paint, among others. Therefore, the total number of days out of service is not evidence that the vibration was a defect that substantially impaired the use or value or safety of the vehicle.

The plaintiff also refers to a Technical Service Bulletin ("TSB") entitled "Vibration - Driveline Drone or Vibration Felt at 80-96 km/h (50-60 mph) - Vehicles Equipped with 228 Inch Wheelbase and 6.8L Engine Only," as being probative of the existence of a substantial impairment as to her vehicle, but she fails to offer any explanation as to how the TSB supports her case. Moreover, the document to which the plaintiff refers does

13

not seem to have even been submitted for the Court's review.[2] As a consequence, the TSB cited by the plaintiff is insufficient to establish that her vehicle suffers from a substantial impairment.

Finally, the plaintiff's citation to the deposition of her expert Mark Sargent also falls short of demonstrating the existence of a substantial impairment. Ms. Sirlouis directs the Court's attention to a portion of that deposition in which Mr. Sargent stated that the degree of vibration in the vehicle was "certainly above the industry standard." Ms. Sirlouis suggests that based on this testimony a reasonable jury could conclude that the use, value, or safety of the motorhome was substantially impaired. The problem with this contention is that Ms. Sirlouis provides no basis for concluding that a vibration that measures "above the industry standard" is by necessity a defect that "substantially impairs" the use or value of the motorhome. Ohio case law establishes that "substantial impairments" do not include "intermittent groaning," "grinding noise[s]," or "vibrations," that do not affect the "use, value, or safety" of the automobile, Miller, 2001 WL 587496, at *4. As a consequence, because the cited deposition testimony does not indicate whether the vibration affected the driveability or safety or value of the vehicle, the Court cannot reasonably infer that the vibration amounted to a "nonconformity" as that term is understood under Ohio law.

---

[2] In plaintiff's brief in opposition to Four Winds' motion for summary judgment, plaintiff's counsel asserts that the TSB entitled "Vibration - Driveline Drone or Vibration Felt at 80-96 KM/H (50-60 mph)" with the identifying number 01-17-3 has been docketed as Defendant's Exhibit 2. The Court's review of Defendant's Exhibit 2 (Doc. 25-1) reveals a TSB different from that cited by the plaintiff, entitled "Vibration Diagnostics--Steering Wheel Nibble--Tire Wheel Runout And Balance" with identifying number TSB 08-24-2. It is not apparent, and plaintiff does not explain, how this TSB is relevant to whether the use, value, or safety of Ms. Sirlouis's vehicle was "substantially impaired."

*Whether a reasonable number of repair attempts were undertaken*

Assuming the plaintiff had supplied facts from which a reasonable inference could be drawn that the vibration substantially impaired the use, value, or safety of the vehicle, she still fails to present a viable Lemon Law claim. Under Ohio's Lemon Law, liability is dependent on whether the "manufacturer, its agent, or its authorized dealer" was able "to conform the motor vehicle to any applicable express warranty by repairing or correcting any nonconformity after a reasonable number of repair attempts." Ohio Rev. Code § 1345.72(B).

As noted above, one way to meet the presumption is to show that the vehicle was out of service for a cumulative total of thirty or more calendar days. Ohio Rev. Code § 1345(B). In the present case, the plaintiff asserts that the vehicle was out of service for thirty-five days for repairs related to the vibration. However, of those thirty-five days, only fourteen days can reasonably be attributed to the manufacturer, Four Winds, or its authorized dealer, General RV. It is undisputed that the remaining days out of service occurred while the motorhome was in the custody of Ganley Ford or Mor-Ryde neither of which are the "manufacturer, its agent, or its authorized dealer." While the plaintiff gestures at the possibility that Ganley Ford or Mor-Ryde were acting as the agents of Four Winds under a theory of actual or apparent agency, she offers no meaningful argument on this point.[3] Therefore, because the plaintiff has failed to allege, argue, or

---

[3] Under Ohio law, actual agency occurs where there is a consensual relationship between the agent and principal. Flick v. Westfield Nat'l Ins. Co., No. 91–CO–45, 2002 WL 31168883, at *6, 2002 Ohio App. LEXIS 5250, at *27 (Ohio Ct.App. Sept. 26, 2002).

In the context of apparent agency, an agent binds the principal when the

15

present any pertinent facts in relation to whether Ganley Ford or Mor-Ryde were the agents of Four Winds, the days that the motorhome was in the custody of Ganley Ford and Mor-Ryde will not be counted against Four Winds. Because only fourteen days can be attributed to Four Winds, Ms. Sirlouis does not meet the thirty day threshold contained in Ohio Rev. Code § 1345.73(B).

Alternatively, a Lemon Law plaintiff may establish "a reasonable number of repair attempts" were undertaken by providing evidence that "[s]ubstantially the same nonconformity [was] subject to repair three or more times and either continue[d] to exist or recur[red]." Ohio Rev. Code § 1345.73(A). According to the plaintiff's affidavit, there were numerous attempts to repair the vibration. Among these, there are several attempts at repair by Ganley Ford and Mor-Ryde. For reasons already noted *supra*, these repair attempts do not count against Four Winds, because the plaintiff has failed to establish that either Ganley Ford or Mor-Ryde is a manufacturer or the authorized dealer or agent of Four Winds.

The plaintiff also claims that General RV, Four Winds' authorized dealer, made four attempts at repairing the vibration, and she cites four work orders issued by

---

evidence shows "(1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority." Master Consol. Corp. v. BancOhio Nat'l Bank, 61 Ohio St.3d 570, 575 N.E.2d 817, 822 (1991).

The plaintiff's unsubstantiated assertion that both Ganley Ford and Mor-Ryde "were authorized by Four Winds to perform repairs on the RV that [Four Winds] supposedly could not" fails to establish the existence of either an actual or an apparent agency relationship.

16

General RV as proof. However, upon review of these documents, the Court concludes that the plaintiff's contention does not stand up to scrutiny, as she supplies no meaningful basis for equating the number of work orders with the number of repair attempts. With all reasonable inferences drawn in favor of Ms. Sirlouis, the only rational conclusion is that the four separate work orders, issued between the 5th and 15th of September 2008, represent a single attempt to address the vibration complaint.

According to the evidence provided by the plaintiff, the repair began on 5 September 2008, when it was ordered that technicians "remove the drive shaft so it can be repaired." (Work Order #901184, Doc. 43-3 at 46). On 10 September 2008, General RV technicians duly "remove[d] the rear drive shaft . . . and pack[ed] it up for [Mor-Ryde]." (Work Order #901237, Doc. 43-3 at 47). Two days later, a General RV technician "reinstall[ed] customer front and rear drive shaft" and took the motorhome on a test drive. (Work Order #901271, Doc. 43-3 at 49). Finally, on 15 September 2008, the motorhome was filled with fuel and the customer was taken on a test drive. (Work Order #901282, Doc. 43-3 at 51). In the Court's view, the work orders relate to a single repair -- removal and replacement of the drive shaft. The presumption of liability under R.C. 1345.73(A) depends on whether following the repair, the nonconformity "either continue[d] to exist or recur[red]." In this case, whether the vibration "continued to exist or recurred" would not be evident until the drive train was reinstalled and the vehicle was test driven. Therefore, the four work orders represent a single repair attempt.

In sum, the plaintiff has failed to establish that the vibration amounted to a nonconformity that substantially impaired the use, value, or safety of the motorhome. Even if the plaintiff had provided such evidence, she has not established that Four

17

Winds made a "reasonable number of repair attempts" and thus triggered the presumption of Lemon Law liability. Summary judgment as to the Lemon Law claim will accordingly be granted in favor of the defendant.

### B. The Plaintiff's Breach of Warranty Claims

The plaintiff brings breach of implied and express warranty claims pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*. The Magnuson–Moss Act is the federal statute that sets forth guidelines, procedures and requirements for warranties, written or implied, on consumer products. See 15 U.S.C. §§ 2301–2312. The applicability of the Magnuson–Moss Act is dependant upon a state law claims for breach of warranty. Labonte, 1999 WL 809808, at *7. "[E]xcept in the specific instances in which Magnuson-Moss expressly prescribes a regulating rule, the Act calls for the application of state written and implied warranty law, not the creation of additional federal law. Walsh v. Ford Motor Co., 807 F.2d 1000, 1012 (D.C. Cir. 1986). Therefore, the Court's consideration of Ms. Sirlouis's Magnuson-Moss claims is coterminous with her breach of warranty claims under Ohio law.

*Implied Warranty*

Four Winds argues that it is entitled to judgment as a matter of law on Ms. Sirlouis's implied warranty claims because she is not in privity with Four Winds. In support, Four Winds asserts that Under Ohio law, "purchasers of automobiles may assert a contract claim for breach of implied warranty of merchantability, only against parties with whom they are in privity of contract." Curl, 871 N.E. 2d at 1147. Ms. Sirlouis offers no argument in opposition, and it is undisputed that Ms. Sirlouis entered into a

18

sales contract with General RV, not Four Winds. Summary judgment will be granted as to the plaintiff's implied warranty claims.

*Breach of Express Warranty*

Four Winds moves for summary judgment with respect to Ms. Sirlouis's claim that the defendant's failure to repair the vibration amounts to a breach of its express warranty. Four Winds acknowledges that its limited express warranty "obligates [it] to repair or replace defective materials or workmanship," but the defendant asserts that the warranty is limited by language contained in a section entitled "What is Not Covered." The relevant language is as follows:

> [t]his Limited Warranty does not cover any material, component or part of the RV that is warranted by another entity, including, by way of example, but not limited to, the automotive chassis and power train, including the engine, drive train, steering and alignment, braking, wheel balance . . . .

(Doc. 22-1, p. 31)

According to Four Winds, it is undisputed that the drive train, chassis, and engine were warranted by Ford; Therefore, because the plaintiff maintains that the source of the vibration was the drive train and engine, the defect was covered by Ford's warranty, not Four Winds'. Ms. Sirlouis provides no argument in opposition. Based on the evidence before it, the Court agrees with Four Winds that its warranty does not provide coverage of the defect of which Ms. Sirlouis complains. Therefore, summary judgment will be granted in favor of Four Winds with respect to Ms. Sirlouis's breach of express warranty claim.

19

**IV. Conclusion**

For the reasons stated above, Four Winds' motion for summary judgment is granted.

IT IS SO ORDERED.

                                                       /s/ Lesley Wells
                                                      UNITED STATES DISTRICT JUDGE

Date: 15 July 2014